# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

WALTER L. STATEN, et al., )
)
    Plaintiffs, )
)
v. )   Case No.: 2:17-cv-00376-SGC
)
D.R. HORTON, INC.- )
BIRMINGHAM, )
)
    Defendant.

## MEMORANDUM OPINION[1]

The court has before it the January 8, 2018 motion for summary judgment filed by Defendant D.R. Horton, Inc.-Birmingham ("DRH"). (Doc. 22). Pursuant to the court's initial order and the January 26, 2018 order, the motion was under submission as of February 19, 2018. (Docs. 15, 25). After consideration of the briefs and evidence, the motion is due to be granted for the following reasons.

## I. STATEMENT OF FACTS

DRH is an Alabama corporation engaged in the homebuilding business. (Doc. 23-37 at 2). DRH constructed a spec home located at 9318 Doss Ferry Lane in Kimberly Alabama. (*Id.* at 3). In July 2015, DRH reduced the asking price for the home to $209,900.00 because the house had been on the market for a certain

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

period of time and had not sold. (*Id.*). On August 8, 2015, Plaintiffs Walter L. Staten[2] and Sandra Staten, an African-American married couple, executed a purchase agreement to buy the home from DRH for the asking price. (*Id.*; Doc. 23-1 at 12; Doc. 23-35 at 22; Doc. 23-11 at 1-10). DRH accepted the agreement on August 11, 2015. (Doc. 23-11 at 9-10).

The purchase agreement was conditioned on the Statens obtaining a loan in the principal amount of the purchase price. (*Id.* at 1). Further, the agreement required the Statens to provide DRH with written evidence of loan approval within twenty-one days of DRH's acceptance of the agreement. (*Id.* at 2). The Statens sought financing through DHI Mortgage Company, Ltd. ("DHI Mortgage"), and Mr. Staten also sought financing through Regions Mortgage. (Doc. 23-18 at 1-4; Doc. 23-35 at 24, 30; Doc. 23-36 at 1).

During DHI Mortgage's investigation of the loan application, questions arose regarding the income and credit worthiness of the Statens. (Doc. 23-35 at 26; Doc. 23-37 at 31). DHI Mortgage obtained credit reports on the Statens from EGS Credit Services. (*Id.*). The credit scores showed no credit for Mrs. Staten and also showed that Mr. Staten did not have sufficient credit to sustain the loan. (Doc. 23-35 at 42; Doc. 23-36 at 2). Specifically, Mr. Staten's report stated that the

---

[2] It is undisputed Walter Staten is deceased. (Doc. 23-35 at 2-3). However, neither party filed a suggestion of death. As such, the provisions of Federal Rule of Civil Procedure 25 were not triggered. Regardless, the court does not have to determine which claims, if any, survive Mr. Staten's death because summary judgment is appropriate as to all claims alleged in the complaint.

Experian score was affected, among other factors, by the "number of accounts with delinquency" and that both the Equifax and TransUnion scores were impacted, among other factors, by "derogatory public record or collection filed." (Doc. 23-31 at 1-2). Mrs. Staten's report stated her credit score was "not available from the consumer reporting agency because they may not have enough information about [her] credit history to calculate a score."[3] (Doc. 23-34 at 1).

By mid-August 2015, the Statens were aware of the issues regarding their ability to receive a loan from DHI Mortgage, and Mrs. Staten informed DRH they were going to see if their bank would loan them more money. (Doc. 23-35 at 25-26; Doc. 23-37 at 34). Mr. Staten applied for a VA mortgage through Regions Mortgage in the full amount of the purchase price. (Doc. 23-38 at 14-24). The Statens remained in communication with DRH throughout the loan process. (Doc. 23-37 at 33-38).

On August 29, 2018, DHI Mortgage sent letters to both Mr. Staten and Mrs. Staten stating, "[W]e are unable to provide you financing at this time based on your current credit profile." (Doc. 23-14 at 1; Doc. 23-15 at 1). DHI Mortgage also issued credit denial, termination or change notices showing the Statens' request for credit was denied. (Doc. 23-16 at 1-3; Doc. 23-17 at 1-3). The addresses on both the letters and the notices from DHI Mortgage contained the

---

[3] Mrs. Staten testified she told DHI Mortgage the credit scores obtained were not hers or her husband's scores but instead were those of persons with the same names. (Doc. 23-35 at 29).

3

wrong address. (Doc. 23-35 at 26-27). The Statens never lived at the address contained on the documents, and Mrs. Staten testified she did not receive any of the documents or know they existed until the lawsuit. (*Id*.). Mr. Staten did, however, own the property where the documents were mailed. (*Id*. at 31).

On August 26, 2015, Regions sent a letter to Mr. Staten advising him of the denial of his credit application.[4] (Doc. 23-19 at 1-2). Mrs. Staten testified she did not know about the decision from Regions. (Doc. 23-35 at 38). On August 31, 2015, Regions notified DRH it did not approve the loan to Mr. Staten "due to credit." (Doc. 23-37 at 40).

Because the Statens were unable to obtain financing as required by the purchase agreement, DRH sent them a letter with a termination and release agreement on October 1, 2015. (Doc. 23-22 at 1-3; Doc. 23-35 at 36; Doc. 23-37 at 4). The letter asked the Statens to sign and return the termination and release agreement to DRH within five business days. (Doc. 23-22 at 1). The agreement stated DRH would refund the earnest money deposited under the purchase agreement and required both Mr and Mrs. Staten's signatures. (*Id*. at 2). When the Statens did not sign the termination and release agreement, DRH sent

---

[4] This letter went to the correct address. (Doc. 23-19 at 1-2).

4

additional copies of the termination and release agreement to them in early January 2016.[5] The Statens refused to sign the agreement. (Doc. 23-37 at 5).

After both DHI Mortgage and Regions denied the Statens applications for credit to purchase the home, DRH renewed its attempts to sell the home. (*Id*.). DRH again reduced the price and eventually sold the home to a Caucasian individual who qualified for financing. (*Id*.).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

---

[5] Although the record is a bit unclear about the timing, the Statens continued to dispute the credit information used as the basis of the loan denials. (See Doc. 23-35 at 38-42).

5

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

**III. DISCUSSION**

Plaintiffs' amended complaint alleges DRH discriminated against them based on their race in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §3604(a) and (b), the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691, and the Alabama Fair Housing Law ("AFHL") and breached the contract by refusing to sell the home to Plaintiffs. (Doc. 6). Defendant contends Plaintiffs' claims fail because the undisputed evidence shows Plaintiffs were not qualified to buy the home, there is no evidence of racial discrimination, and Defendant did not breach the contract with Plaintiff. (Doc. 22). The court addresses each claim below.

## A. Fair Housing Act and Alabama Fair Housing Law[6]

The FHA makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ." 42 U.S.C. § 3604(a). Further, the FHA makes it unlawful to "discriminate against any person in the terms, conditions or privileges of a sale or rental of a dwelling, . . . because of race . . . ." *Id.* § 3604(b).

The three-part test developed in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), governs cases brought under the FHA. *Secretary, U.S. Dep't of Housing and Urban Dev. on behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990). "Under *McDonnell Douglas*, the initial burden rests on the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060-61 (11th Cir.

---

[6] The court could not find any case in which the Eleventh Circuit, Alabama federal courts, or Alabama state courts addressed a claim of discrimination under the AFHL. That being said, the Eleventh Circuit has held the same legal analysis applies to claims under the FHA and the Florida Fair Housing Act because the two laws are "substantively identical." *See Philippeaux v. Apt. Inv. & Mgmt. Co.*, 598 F. App'x 640, 643 (11th Cir. 2015). The relevant portions of the FHA and AFHL are also substantively identical, and the parties appear to agree that cases addressing the FHA can be applied to claims under the AFHL. Therefore, the court applies the same legal analysis to Plaintiffs' claims. Summary judgment is due to be granted as to Plaintiffs' claim of racial discrimination under the AFHL for the same reasons it is due to be granted under the FHA.

1994) (citations omitted). Once a plaintiff has satisfied this burden, a presumption of discrimination arises and "the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its action." *Blackwell*, 908 F.2d at 870 (citation omitted). If the defendant succeeds, the burden then shifts back to the plaintiff to proffer evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the [defendant] were not the real reasons for the adverse" action, *Frazier v. Doosan Infracore Int'l*, 479 F. App'x 925, 932 (11th Cir. 2012), and that unlawful discrimination was the real reason for the conduct, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981).

A plaintiff establishes a prima facie case by showing the following: (1) he or she is a member of a racial minority; (2) he or she applied for and was qualified to purchase the property; (3) the owner rejected the plaintiff's offer; and (4) the property remained available thereafter. *Blackwell*, 908 F.2d at 870. Here, Plaintiffs cannot establish a prima facie case because the undisputed evidence shows Plaintiffs were not qualified to purchase the property. Both DHI Mortgage and Regions denied Plaintiffs' credit applications, and the purchase agreement required Plaintiffs to provide financing for the purchase price. Because they did not provide the requisite financing, Plaintiffs were not qualified to purchase the property, and their prima facie case fails.

Plaintiffs' contention that the credit scores were inaccurate does not support their discrimination claim against DRH. Even assuming the credit scores were incorrect, it was not DRH's responsibility to correct the issues for the Statens. DRH did not have any control over the reports generated by the credit reporting agencies or the decisions of the lenders not to extend credit to the Statens based on those credit reports.[7] Simply put, there is no evidence DRH discriminated against the Statens when DRH cancelled the purchase agreement for lack of financing. The Statens had the burden under the purchase agreement to provide evidence of financing, regardless of what their credit reports reflected, and they did not. As such, DRH is entitled to summary judgment on Plaintiffs' claim under the Fair Housing Act.

B.  **Equal Credit Opportunity Act**

The ECOA makes it unlawful for a creditor to discriminate against an applicant on the basis of race. 15 U.S.C. § 1691(a)(1). For purposes of the ECOA's prohibition against discrimination, the term creditor includes "a person who, in the ordinary course of business, regularly refers applicants or prospective

---

[7] Although Plaintiffs repeatedly assert DHI Mortgage is a subsidiary of DRH, there is no evidence in the record to support this assertion. Instead, the evidence shows DHI Mortgage is a mortgage lender in the business of providing mortgage financing services for homebuyers, including homebuyers for DRH, as well as other homebuilders. (Doc. 23-36 at 1; Doc. 23-37 at 2). DHI Mortgage also provides refinancing, investment, and cash out refinancing services. (Doc. 23-36 at 1). The evidence does not show any connection between DRH and DHI Mortgage in the approval of financing applications other than the fact that DRH provided DHI Mortgage with information regarding DRH purchasers. (Doc. 23-37 at 2).

applicants to creditors, or selects or offers to select creditors to whom requests for credit can be made." 12 C.F.R. § 202.2(l). Because DRH regularly refers customers to creditors in conjunction with their home purchase, the anti-discrimination provisions of the ECOA apply to DRH.

The Eleventh Circuit has not explicitly held the *McDonnell Douglas* framework applies to discrimination claims under the ECOA. *See Hall v. Johann*, 208 F. App'x 726 (11th Cir. 2006) (in upholding a grant of summary judgment, the Eleventh Circuit "[a]ssum[ed], without deciding, that Title VII's analytical framework applies to retaliation claims under the Equal Credit Opportunity Act"). That being said, at least two district courts in the Eleventh Circuit have applied this framework, and the parties do not dispute its application. *Cooley v. Sterling Bank*, 280 F. Supp. 2d 1331, 1338-39 (M.D. Ala. 2003); *Smith v. Famer and Merchants Bank*, 2014 WL 1774119, at *5 (M.D. Ga. May 2, 2014). Therefore, for Plaintiffs' ECOA claim to proceed, Plaintiffs must establish the prima facie case.

In the credit discrimination context, a plaintiff can establish a prima facie case of discrimination by offering evidence showing the following: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for a loan from the defendant; (3) the loan was rejected despite the plaintiff's qualifications; and (4) the defendant continued to approve loans for applicants outside of the plaintiff's protected class with similar qualifications. *Cooley,* 280 F.

Supp. 2d at 1339. As discussed above, Plaintiffs' prima facie case fails because the undisputed evidence shows Plaintiffs were not qualified for the loan. Plaintiffs' argument regarding the alleged inaccuracies in their credit report similarly fails. DHR is entitled to summary judgment on Plaintiffs' claim under the ECOA.

## C. Breach of Contract

Plaintiffs contend DRH breached its duties under the agreement by refusing to sell the home to them. (Doc. 6 at 7). To establish a breach of contract claim under Alabama law, Plaintiffs must establish (1) a valid contract between the parties, (2) Plaintiffs' performance under the contract, (3) Defendant's non-performance, and (4) resulting damages. *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). Defendants contend Plaintiff cannot establish the second element for breach of contract, their performance. (Doc. 22 at 25-26). The court agrees.[8]

As discussed above, the undisputed evidence shows the Statens did not qualify for financing and did not provide DRH with written evidence of approval of a loan within twenty-one days of DRH's acceptance of the purchase agreement. Instead of addressing this failure, Plaintiffs argue DRH somehow had an obligation

---

[8] In their response to summary judgment, the Statens argue for the first time that DRH breached the agreement by failing to return their earnest money. (Doc. 26 at 9). Although DRH had the right to keep the earnest money as liquidated damages under the purchase agreement, DRH returned the money to Mrs. Staten before it filed its reply brief. (Doc. 27 at 15).

to inform them their loan applications had been denied and DRH failed to adequately do so. (Doc. 26 at 8). The plain language of the agreement does not support this argument. The burden was on the Statens to provide DRH with evidence of financing. Because Plaintiffs did not perform under the contract, their breach of contract claim fails, and Defendant is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant D.R. Horton, Inc.-Birmingham is entitled to judgment as a matter of law on all the claims asserted in Plaintiff's complaint. Defendant's motion for summary judgment (Doc. 22) is due to be granted. A separate order will be entered.

**DONE** this 13th day of July, 2018.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE